IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MAHMOAD ABDAH**, *et al.*,   )<br>   )<br>   Petitioners,   )<br>   )<br>   v.   )<br>   )<br>**BARACK H. OBAMA**, *et al.*,   )<br>   )<br>   Respondents.   )<br>_____ ) | Civil Action No. 04-1254 (RCL) (AK)<br>(Magistrate Judge Kay) |

## MOTION CONCERNING THE PROTECTIVE ORDER ENTERED BY
## JUDGE HOGAN ON SEPTEMBER 11, 2008

This motion is filed with Magistrate Judge Alan Kay pursuant to an Order entered by Judge Kessler on November 2, 2005, in this action and in numerous other Guantánamo habeas actions. *See* Doc. 166.  That order provides that "all Motions pertaining to interpretation or construction of any protective order which has been entered" in the relevant Guantánamo habeas cases, including this case, as well as "all disputes pertaining to logistical issues, such as communications with or visits to clients and counsel," "shall be referred" to Magistrate Judge Kay. *Id.* at 44, 45.

The undersigned represent numerous Guantánamo detainees.  For nearly eight years, their access to and communications with their clients have been governed by two protective orders—first, by an order issued by Judge Joyce Hens Green in November 2004, and second, by a similar order issued by Judge Thomas F. Hogan on September 11, 2008 ("Protective Order").

On April 8, 2010, Judge Henry H. Kennedy denied the petition for habeas corpus of our client Yasein Khasem Mohammad Esmail (ISN 522). *Abdah v. Obama*, 709 F. Supp. 2d

25 (D.D.C. 2010).  On April 8, 2011, the D.C. Circuit affirmed the denial.  *Esmail v. Obama*, 639 F.3d 1075 (D.C. Cir. 2011).  Counsel last met with Esmail, under the Protective Order, on July 21, 2011.

When counsel most recently sought to meet with Esmail, in May 2012, the Government took the position that Esmail no longer had the right to meet with counsel, on the asserted ground that his habeas case had been "terminated."  The Government took the position that counsel may not visit Esmail unless counsel signed a Memorandum of Understanding ("MOU").  The MOU would replace the system of access to counsel provided by Judge Hogan's Protective Order, which is subject to judicial supervision, with a system purporting to give the Commander, Joint Task Force–Guantanamo ("JTF"), absolute, unreviewable control over such access.  Rather than accede, counsel refused to sign the MOU and, accordingly, were not permitted to meet with Esmail.

This motion seeks a ruling that Judge Hogan's Protective Order continues to apply to Esmail, that the Government may not condition Esmail's access to counsel on counsel's submission to the new MOU, and that the Government's refusal to permit Esmail to have access to counsel under Judge Hogan's Protective Order is a violation of that Order.

**BACKGROUND**

In January 2002, the first detainees arrived at Guantánamo.  The first detainee habeas corpus cases were filed in the spring of 2002.  On June 28, 2004, in *Rasul v. Bush*, 542 U.S. 466 (2004), the Supreme Court held that the federal courts have jurisdiction to hear Guantánamo detainees' habeas corpus challenges to the legality of their detention.

On August 17, 2004, the Calendar and Case Management Committee of the District Court designated Judge Joyce Hens Green "to coordinate and manage all proceedings in these

matters and to the extent necessary, rule on [common] procedural and substantive issues." Doc. 9 at 1.  In November 2004, Judge Green issued a protective order that included procedures for counsel access.  *See* Doc. 60.

The Government moved to dismiss the Guantánamo habeas cases.  In January 2005, Judge Richard J. Leon, who had not transferred his cases to Judge Green, granted the Government's motion to dismiss his cases.  Judge Green, ruling in the other cases, denied the Government's motion to dismiss.  The cases were stayed pending appeal.  While the cases were on appeal, counsel continued to be permitted access to and communications with their clients subject to the Protective Order entered by Judge Green.

On June 12, 2008, the Supreme Court held in *Boumediene v. Bush*, 553 U.S. 723 (2008), that the constitutional privilege of the writ of habeas corpus extends to Guantánamo and permits the detainees to seek habeas relief.  In light of *Boumediene*, the stay of the habeas cases was lifted.

On July 2, 2008, Judge Thomas F. Hogan issued an order stating that the District Court had designated him to "coordinate and manage proceedings in all cases involving" Guantánamo detainees.  Doc. 242 at 1-2.  On September 11, 2008, Judge Hogan issued a new Protective Order, which superseded the one issued by Judge Green.  The Order was entered in this docket (*see* Doc. 283) and in numerous other Guantánamo cases.  The Order contains detailed procedures, similar to those in Judge Green's Protective Order, which "shall govern counsel access" to the Guantánamo detainees.  Protective Order, Doc. 283, ¶ II.A.1; *see also id*. ¶¶ II.B-II.J.

Since Judge Green issued her Protective Order in November 2004, undersigned counsel have made dozens of visits to Guantánamo to meet with their clients, including

Esmail, under access procedures governed first by her Protective Order and later by Judge Hogan's Protective Order.

On May 10, 2012, pursuant to the Protective Order, undersigned counsel (Mr. Remes) submitted a request to meet with Esmail (and other clients) during a trip to Guantánamo starting on May 16. The Joint Task Force–Guantanamo approved Mr. Remes' proposed schedule on May 14. On May 18, however, the Government informed counsel, through an email from Jim Gilligan, Assistant Director of the Civil Division, that Esmail's "case has been terminated," and thus "your request for a meeting with him cannot be granted except pursuant to and in accordance with the terms of the enclosed Memorandum of Understanding Governing Continued Contact Between Counsel/Translator and Detainee Following Termination of the Detainee's Habeas Case (MOU)." (A copy of the email, with the MOU, is attached as Exhibit A.) The Government thus refused to permit Esmail and his counsel to meet pursuant to the Protective Order. Counsel refused to sign the MOU because it is inconsistent with Judge Hogan's Protective Order and because its provisions are onerous and restrictive.

The MOU gives the Commander of the Joint Task Force–Guantanamo absolute authority over access to counsel. Every aspect of such access is governed by his unreviewable discretion, including whether clients may meet with their counsel at all:

> ¶ 6:   [C]ontinued access to or communication with the detainee, and/or access to classified or protected information, pursuant to this MOU, is subject to the authority and discretion of the Commander, Joint Task Force–Guantanamo.
>
> ¶ 8(f):  Any disputes regarding the applicability, interpretation, enforcement, compliance with or violations of this MOU shall be resolved in the final and unreviewable discretion of the Commander, Joint Task Force–Guantanamo, in coordination with the Commander, U.S. Southern Command.

- 4 -

The MOU also contains numerous highly restrictive provisions.  For example, it prohibits counsel from having access to classified information obtained or generated in the course of representing the client in his "terminated" habeas action, including counsel's own work product (MOU ¶ 8(b)); it prohibits counsel from using information obtained in the course of representing one client in the case of another client (*id.* ¶¶ 4, 8(a)(1)), or sharing information obtained in the course of representing a client with counsel for other detainees (*id.* ¶ 8(a)(10)); it restricts the means by which counsel may endeavor to seek their clients' release (*id.* ¶¶ 4, 8(a)(2)), and the use that counsel may make of information obtained under the MOU (*id.* ¶¶ 4, 8(a)(1)).  And counsel are required to agree that virtually everything else at the Guantánamo base "will take priority over access and processes governed by this MOU." *Id.* ¶ 8(c).

**ARGUMENT**

The only argument offered by the Government for refusing to allow Esmail access to counsel pursuant to the Protective Order is that his "habeas case has been terminated." *See* Ex. A.  The argument is meritless.

The Protective Order by its terms applies to "attorneys employed or retained by or on behalf of a petitioner for purposes of representing the petitioner in habeas corpus or other litigation in federal court."  Protective Order, Doc. 283, ¶ I.B.11.  Esmail's rights to seek such relief were not extinguished simply because his initial request for the habeas writ was denied.  As long as he is detained, he retains the right to pursue any available legal avenues to obtain his release.  This includes the right to file a new or amended habeas petition, or to file a motion under Rule 60 of the Federal Rules of Civil Procedure to reopen any orders entered in his case.

Nothing in the Protective Order provides that its access provisions lapse simply because a detainee's initial request for habeas relief is denied. Rather, in setting forth the procedures for counsel access, the Order defines "counsel" as "attorneys . . . retained by or on behalf of a detainee for purposes of representing the detainee in the United States District Court for the District of Columbia." *Id.* ¶ II.B.4. That precisely describes the continuing role of Esmail's counsel. Esmail wants counsel to pursue all available legal avenues to secure his release, and counsel seek to meet with Esmail as part of ongoing consultations as to the legal steps available for that purpose. The Protective Order applies to those consultations. It cannot be abrogated by the Government.

Moreover, the Protective Order provides that habeas counsel with security clearances can share classified information among themselves, because they are "presumed to have a 'need to know' information both in their own cases and in related cases pending before this Court." *Id.* ¶ I.D.28. This permits habeas counsel to have some of the information-sharing advantages among various cases that the Government lawyers have (and frequently use), and these advantages are important given the factual overlap among various Guantánamo habeas cases.[1] If counsel's access to Esmail or to other detainee-clients is denied, these information-sharing provisions would be impaired. (Indeed, the MOU prohibits information-sharing as one of the conditions for counsel access under the MOU. *See* MOU ¶ 8(a)(10).) The Protective Order must continue to apply to all of the detainees who brought habeas petitions, whether or not their initial requests for relief have been denied, in order to preserve the

---

[1] The Order states that it "shall govern counsel access . . . for purposes of litigating these cases." Protective Order, Doc. 283, ¶ II.A.1. This recognizes that the Guantánamo cases should be viewed collectively.

efficacy of the information-sharing provisions of the Order.[2] The habeas cases have not all been terminated, and there is no imminent prospect that they all will be. For example, this action (*i.e.*, No. 04-1254)—the action which includes Esmail as a named party—remains an active case.

For Guantánamo detainees to have a "meaningful" opportunity to challenge their ongoing detention, as promised by *Boumediene*, 553 U.S. at 779, 783, they must have an ongoing ability to consult with counsel. Esmail has no education concerning legal matters, he speaks no English, and he is locked in a prison in Cuba, with no access concerning legal matters to anyone other than counsel. *See Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 22 (D.D.C. 2005) ("Petitioners are from foreign countries, most, if not all, have been detained for close to four years, do not speak English, and are in all likelihood totally unfamiliar with the United States legal system."); *Al Odah v. United States*, 346 F. Supp. 2d 1, 8 (D.D.C. 2004) ("To say that Petitioners' ability to investigate the circumstances surrounding their capture and detention is 'seriously impaired' is an understatement." (quoting *Battle v. Armontrout*, 902 F.2d 701, 702 (8th Cir. 1990))). If Esmail is not allowed to have a full and fair opportunity to meet with counsel in a confidential privileged setting, then his continuing right to challenge his detention becomes a nullity. A detainee's right of access to the courts means "nothing" without meaningful access to counsel. *Al-Joudi*, 406 F. Supp. 2d at 22.

The unfairness of the Government's position is starkly apparent when compared to the treatment of other prisoners who have been given *more* process than that afforded to

---

[2] *See also* Protective Order, Doc. 283, ¶ I.D.33 (classified document destruction requirement is triggered upon "final resolution of these cases, including all appeals," *not* upon denial of a single detainee's request for relief); *id.* ¶ I.E.45 (protected document destruction requirement is triggered upon "the resolution of these actions, and the termination of any appeals therefrom," *not* upon denial of a single detainee's request for relief).

Guantánamo detainees.  Convicted felons in American prisons have access to prison libraries and can be visited by friends, family and lawyers.  The felons must "be afforded access to the courts" and "must have a reasonable opportunity to seek and receive the assistance of attorneys."  *Procunier v. Martinez*, 416 U.S. 396, 419 (1974).  Inmates are entitled to the "tools" they "need in order to attack their sentences, directly or collaterally."  *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  For Guantánamo detainees, like Esmail, who have never even been charged with a crime, much less convicted, access to counsel is absolutely essential.  Not surprisingly, the right of Guantánamo detainees to have meaningful access to counsel has repeatedly been upheld.  *See, e.g.*, *Al-Oshan v. Obama*, 753 F. Supp. 2d 1, 5 (D.D.C. 2010); *Tumani v. Obama*, 598 F. Supp. 2d 67, 69-70 (D.D.C. 2009); *Zuhair v. Bush*, 592 F. Supp. 2d 16, 17 (D.D.C. 2008); *Omar v. Harvey*, 514 F. Supp. 2d 74, 77 (D.D.C. 2007); *Adem v. Bush*, 425 F. Supp. 2d 7, 18-19 (D.D.C. 2006); *Al-Joudi*, 406 F. Supp. 2d at 22.

The MOU not only impairs and threatens meaningful access to counsel for habeas and federal court purposes; it also would hamstring counsel in helping clients to prepare for upcoming proceedings before the Periodic Review Board ("PRB"), which will assess whether detention should continue.  These proceedings are mandated by Executive Order No. 13,567, 76 Fed. Reg. 13,277 (Mar. 7, 2011), which provides (§ 3(a)(2)) that the detainee "may be assisted in proceedings before the PRB by private counsel."  The MOU, however, would appear to preclude counsel from communicating with the detainee to prepare for PRB proceedings or from using any information obtained pursuant to the MOU in PRB proceedings.  *See, e.g.*, MOU ¶ 4.  This is especially problematic because undersigned counsel expect to represent Esmail in any PRB proceedings.  Moreover, the Executive Order recognizes (§ 8) that issues concerning the lawfulness of the detention may be triggered

during the PRB proceeding.³  Accordingly, information from PRB proceedings may have relevance in future federal court proceedings seeking the detainee's release.

## CONCLUSION

Protective Orders governing counsel access to Guantánamo detainees have been in place for eight years, and there have been at least hundreds and probably thousands of attorney-client visits pursuant to those orders.  The proposed MOU would put the JTF Commander in a position to restrict the legal representation of Guantánamo detainees, even authorizing him to bar visits to the base or phone calls to the detainee.  The Protective Order procedures are time-tested and workable.  There is no valid justification for supplanting them now.  The circumstances strongly suggest that the Government's purpose is to begin reconstructing the "legal black hole," *Adem*, 425 F. Supp. 2d at 11, of Guantánamo's early years.

Petitioner respectfully requests that the Court rule that the Government violated the Protective Order by seeking to require Esmail's counsel to sign the proposed MOU as a condition to having access to him.  Petitioner also requests that the Court rule that the Protective Order continues to apply to this case and that it governs the terms of Esmail's access to counsel.⁴

---

³ The attempt in the MOU to prevent counsel from using information in PRB proceedings that was obtained during a client visit under the MOU might violate the D.C. Bar Rules of Professional Conduct, because it would prevent the attorney from providing effective assistance to the client in a closely related matter.

⁴ Counsel has conferred with Government counsel concerning this motion pursuant to Local Rule 7(m).  The Government states that it opposes the motion.

Respectfully submitted,

/s/ *Brian E. Foster*\_\_\_\_
S. William Livingston
D.C. Bar. No. 59055
Alan A. Pemberton
D.C. Bar. No. 367108
Brian E. Foster
D.C. Bar No. 988311
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, DC 20004-2401
(202) 662-6000 (phone)
(202) 662-6291 (fax)
wlivingston@cov.com
apemberton@cov.com
bfoster@cov.com

David H. Remes
D.C. Bar. No. 370372
APPEAL FOR JUSTICE
1106 Noyes Drive
Silver Spring, MD 20910
(202) 669-6508 (phone)
remesdh@gmail.com

*Counsel for Yasein Khasem Mohammad Esmail*

July 9, 2012

# Exhibit A

| | |
|---|---|
| **From:** | Gilligan, Jim (CIV) |
| **To:** | remesdh@gmail.com |
| **Subject:** | ISN 522: Meeting Request |
| **Date:** | Friday, May 18, 2012 5:26:27 PM |
| **Attachments:** | Post-habeas MOU.PDF |

Dear Mr. Remes:

Your revised visit request dated May 10, 2012, included a request to meet with your client, ISN 522, on May 22, 2012, in addition to other detainee-clients with whom you wished to meet. As ISN 522's habeas case has been terminated, your request for a meeting with him cannot be granted except pursuant to and in accordance with the terms of the enclosed Memorandum of Understanding Governing Continued Contact Between Counsel/Translator and Detainee Following Termination of the Detainee's Habeas Case (MOU).

If you wish to maintain privileged contact and communication with your client in accordance with the MOU's terms, please fill in the information requested in paragraphs two, three and five of the MOU, complete and execute the Acknowledgment and Affirmation attached thereto, and forward it to the Staff Judge Advocate at Guantanamo Bay. Upon receipt he will forward it for counter-signature to the Commander, Joint Task Force-Guantanamo, and return a copy of the counter-signed MOU to you. Please send the SJA the original, executed MOU as soon as possible, so as to avoid any delay in scheduling the meeting with your client.

Very truly yours,


Jim Gilligan

James J. Gilligan
Assistant Director
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044

Tel: 202-514-3358
Fax: 202-616-8470

## MEMORANDUM OF UNDERSTANDING
## GOVERNING CONTINUED CONTACT BETWEEN
## COUNSEL/TRANSLATOR AND DETAINEE FOLLOWING
## TERMINATION OF THE DETAINEE'S HABEAS CASE

1. On September 11, 2008, Judge Thomas Hogan of the United States District Court for the District of Columbia issued a "Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba" (hereinafter "Habeas Protective Order") to apply to certain habeas corpus proceedings brought by individuals detained by the Department of Defense at Guantanamo Bay.

2. On _____, 20___, this Protective Order was entered in the habeas case brought by _____ (ISN _____) (hereinafter "the detainee"), District Court Docket No. ___-CV-_____.

3. The undersigned previously agreed to comply with the terms of the Habeas Protective Order in the case referenced in ¶ 2 above, including ¶ 18, which provides that "[t]he substitution, departure, or removal of any petitioners' counsel from these cases for any reason shall not release that person from the provisions of this Protective Order or the MOU executed in connection with this Protective Order," and ¶ 37, which provides that "[t]he substitution, departure, or removal of petitioners' counsel from these cases for any reason shall not release that person from the provisions of this Protective Order or the Acknowledgment executed in connection with this Protective Order." The undersigned did so by:

   a. Signing on _____, 20___, the "Memorandum of Understanding Regarding Access to Classified National Security Information" (attached to the Habeas Protective Order as Exhibit A, and attached hereto) which stated, *inter alia*, that:

      (1) "I shall never divulge, publish, or reveal either by word, conduct or any other means, such classified documents and information unless specifically authorized in writing to do so by an authorized representative of the United States Government, or as expressly authorized by the [Habeas Protective Order]...."

      (2) "This Memorandum of Understanding and any other non-disclosure agreement signed by me will remain forever binding on me."

      (3) "I have received, read and understand the [Habeas] Protective Order..., and I agree to comply with the provisions thereof."

   b. Signing on _____, 20___, the "Acknowledgement" (attached to the Habeas Protective Order as Exhibit B, and attached hereto) which stated, *inter alia*, that

      (1) I "understand [the] terms [of the Habeas Protective Order], and agree[] to be bound by each of those terms."

      (2) "Specifically, and without limitation, [I] agree[] not to use or disclose any protected information or documents made available to [me] other than as provided by the Protective Order. [I] acknowledge[] that [my] duties under the Protective Order shall survive the termination of this case and are permanently binding, and that failure to comply with the terms of the Protective Order may result in the imposition of sanctions by the Court."

1

4. Undersigned counsel represents[1] that the detainee in the above referenced terminated habeas case has indicated he desires and has authorized the undersigned's continued legal advice and representation following the termination of that habeas case. Undersigned counsel and translator understand and acknowledge that access to the detainee post-habeas is for the sole purpose of obtaining the detainee's transfer or release from detention by the United States Government at Guantanamo Bay through potential habeas corpus or other litigation in United States federal courts or through discussions with the United States Government. Undersigned counsel and translator also understand that access under this MOU is not authorized for any other purpose, including assisting or representing that detainee in connection with military commission proceedings or Periodic Review Board proceedings under Executive Order 13567 (access for these purposes shall be governed by a separate set of procedures). Undersigned counsel and translator agree to immediately inform the Staff Judge Advocate, Joint Task Force-Guantanamo, if his/her continued affiliation with the detainee are terminated for any reason.

5. Undersigned counsel represents that this continued legal representation [does] [does not] require the participation of a translator to assist the counsel and detainee in communicating about that representation.

6. The undersigned understands and acknowledges that continued access to or communication with the detainee, and/or access to classified or protected information, pursuant to this MOU, is subject to the authority and discretion of the Commander, Joint Task Force-Guantanamo. Failure to comply with the terms of this MOU may result in suspension or termination of the undersigned's access to the U.S. Naval Base at Guantanamo, denial of access to the detainee-client, or suspension/revocation of the undersigned's security clearance.

7. The undersigned hereby reaffirms he/she has read the Habeas Protective Order and reaffirms his/her agreement to continue to abide by its terms.

8. In addition to the continuing obligations imposed by the Habeas Protective Order (and the associated MOU and Acknowledgment) the undersigned agrees to the following for purposes of engaging in the continued legal representation of the detainee, post-habeas, described above:

    a. The procedures and requirements set forth in the Habeas Protective Order apply for correspondence between counsel and the detainee (paragraphs II.D.12-13), materials brought into and out of meetings with the detainee and counsel (paragraphs II.E.14-18), classification determinations of detainee communications (paragraphs II.G.19-24), telephonic access to the detainee (paragraphs II.H.25-27), counsel's and translator's handling and dissemination of information from the detainee (paragraphs II.I.28-31) including classified and protected information (paragraphs I.D.21-33 and I.D.34-45),

    logistics of counsel visits (paragraph II.C.11), and JTF-Guantanamo security procedures

---

[1] The counsel shall provide the Office of the Staff Judge Advocate, Joint Task Force-Guantanamo with the direct authorization and the signed representation required by ¶ II.C.10 of the Habeas Protective Order) and a written statement signed by the detainee stating he has authorized counsel to provide him continued legal representation following the termination of his habeas case, or a sworn declaration signed by the counsel stating the detainee-client has verbally relayed this information to the counsel.

2

(paragraphs II.J.32-38), except as follows:

(1) Any classified and/or protected information received pursuant to this MOU shall be used only for the continued legal representation of and advice to the detainee-client for the purpose permitted and contemplated above, except by written permission of the Department of Defense or the appropriate classification authority.

(2) With the exception of non-legal mail, which shall be sent through the United States Postal Service, all counsel and translator contact with the detainee through oral or written communications must be related to and in furtherance of the continued legal representation of the detainee, as permitted and contemplated above.

(3) Requests for counsel visits and phone calls shall be submitted to the Staff Judge Advocate, Joint Task Force-Guantanamo.

(4) All legal mail sent between counsel and the detainee or brought into or out of meetings with the detainee will contain the marking "Post-Habeas" at the beginning of each legal mail marking referenced in the Habeas Protective Order.

(5) When conducting classification reviews of detainee communications under this MOU, and with counsel's consent, the Habeas Privilege Team may consult with pertinent classification or other authorities in DoD or other agencies if deemed necessary by the Habeas Privilege Team. If counsel refuses to consent, the information for which consultation is required will continue to be handled as classified material.

(6) The Habeas Privilege Team may designate information as "protected," which means that information cannot be disseminated or transmitted in any form other than as authorized under this MOU or specifically approved by the government. Authorities within the Department of Defense and other agencies may also designate categories of information as "protected" other than in the context of the classification review.

(7) The Habeas Privilege Team may disclose information obtained through this MOU to designated counsel at DoD and/or DOJ representing the Privilege Team in connection with pending or reasonably anticipated judicial proceedings relating to the information in question. Such DoD and/or DOJ counsel will not disclose the information in question except as required to represent the Privilege Team in such proceedings, and shall take such measures as are necessary to protect privileged material.

(8) All classified information and documents obtained, created or used in the course of the continued legal representation covered by this MOU shall be maintained in the same Secure Facility in the Washington, D.C. area used by counsel under the Habeas Protective Order.

    (9)  All protected information and documents obtained, created or used in the course of the continued legal representation covered by this MOU shall be maintained either in the Secure Facility or by counsel in a manner calculated to prevent any unauthorized disclosure of that material.

    (10)  Except as provided for in this MOU or as specifically authorized by the appropriate government personnel, the counsel and/or translator for the detainee shall not divulge, disclose or distribute classified or protected information to, or receive such information from, any person or entity other than with the co-counsel or translator who is authorized to provide continued legal representation, as permitted and contemplated above, to the same detainee under this MOU.

    (11)  Operational or other resource constraints may result in the extension of processing times for legal mail and materials transmitted under this MOU.

b. Except as otherwise provided herein, counsel and/or the translator will not have access to any classified documents or information previously obtained or created by counsel or translators as part of the detainee-client's prior habeas case, or during the course of the continued legal representation of the detainee, as permitted and contemplated above. Such material shall be maintained, at the government's discretion, at such facility or facilities as may be deemed necessary and appropriate, including in the Secure Facility, in a manner that protects against the disclosure of attorney-client or attorney work product material. Counsel can request access to this information by submitting the justification for such access to DoD OGC, who will then consult with the pertinent classification authorities within DoD and other agencies for a need-to-know determination.

c. The operational needs and logistical constraints at the U.S. Naval Base in Guantanamo Bay, Cuba, as well as requirements for ongoing military commissions, Periodic Review Boards and habeas litigation, will take priority over access and processes governed by this MOU.

d. The termination of continued access hereunder for any reason shall not release post-habeas counsel or translators from the provisions of this MOU regarding access to, handling or disclosure of classified or protected information.

e. Possession and retention of a valid, current United States security clearance is required for access under this MOU.

f. Any disputes regarding the applicability, interpretation, enforcement, compliance with or violations of this MOU shall be resolved in the final and unreviewable discretion of the Commander, Joint Task Force-Guantanamo, in coordination with the Commander, U.S. Southern Command.

g. Any unauthorized disclosure of classified information constitutes a violation of United States criminal laws.

9. This MOU is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any detainee, counsel, or any other party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

10. This MOU will not come into effect until counter-signed by the Commander, Joint Task Force-Guantanamo.

## ACKNOWLEDGEMENT AND AFFIRMATION

The undersigned hereby acknowledges and affirms he/she has read the Habeas Protective Order and reaffirms his/her agreement to abide by those terms that survive the termination of the habeas litigation.

The undersigned hereby acknowledges and affirms that he/she has read the **MEMORANDUM OF UNDERSTANDING GOVERNING CONTINUED CONTACT BETWEEN _____ (COUNSEL)(TRANSLATOR) AND _____ _____ (ISN \_\_\_\_) FOLLOWING TERMINATION OF THE DETAINEE'S HABEAS CASE** (hereinafter "MOU"), understands its terms, and agrees to be bound by each of those terms.

The undersigned acknowledges and affirms that his/her duties under the MOU shall survive the termination of the MOU and are permanently binding, and that failure to comply with the terms of the MOU may result in sanctions described in the MOU, to include but not be limited to immediate denial of access to detainee-client, revocation of counsel's security clearance, and/or suspension or termination of undersigned's access to the U.S. Naval Base in Guantanamo Bay, Cuba, within the discretion of the Commander, Joint Task Force-Guantanamo.

Having familiarized him/herself with the applicable statutes, regulations, and orders related to, but not limited to, unauthorized disclosure of classified information, espionage and related offenses; The Intelligence Identities Protection Act, 50 U.S.C. § 421; 18 U.S.C. § 641; 50 U.S.C. § 783; 28 C.F.R. § 17 *et seq.*; Executive Order 13526; and 32 C.F.R § 2001, the undersigned also acknowledges that he/she may be the recipient of classified and/or protected information as a result of entering into the MOU. In consideration for the disclosure of such classified and/or protected information and documents, the undersigned:

1. Agrees that he/she shall never divulge, publish, or reveal either by word, conduct or any other means, such classified documents and information unless specifically authorized in writing to do so by an authorized representative of the United States Government, or as expressly authorized by the MOU.

2. Agrees that this acknowledgment and any other non-disclosure agreement signed by him/her will remain forever binding on him/her.

DATED:_____  BY:_____
(type or print name here)

Position: _____
(Attorney or translator)

SIGNED:_____

---

COUNTER-SIGNATURE:  _____
Commander, Joint Task Force-Guantanamo

Date:  _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **MAHMOAD ABDAH**, *et al.*, ) | ) | |
| Petitioners, | ) ) | |
| v. | ) ) | **Civil Action No. 04-1254 (RCL) (AK)** **(Magistrate Judge Kay)** |
| **BARACK H. OBAMA**, *et al.*, | ) ) | |
| Respondents. | ) ) ) | |

**[PROPOSED] ORDER GRANTING MOTION
CONCERNING THE PROTECTIVE ORDER ENTERED BY
JUDGE HOGAN ON SEPTEMBER 11, 2008**

Upon consideration of the Motion Concerning the Protective Order Entered by Judge Hogan, the motion is GRANTED. It is hereby ORDERED that:

1. The "Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba" (Doc. 283) continues to apply in this case and continues to govern the terms of Yasein Khasem Mohammad Esmail's access to counsel; and

2. The Government violated the Protective Order by seeking to insist that counsel sign a Memorandum of Understanding as a condition to meeting and communicating with Yasein Khasem Mohammad Esmail.

_____                    _____
Date                                                              Honorable Alan Kay
                                                                      United States Magistrate Judge