**FILED**

AUG 1 3 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
)
IN RE: GUANTANAMO BAY DETAINE      )   Misc. No. 12-0398 (RCL)
CONTINUED ACCESS TO COUNSEL        )
)   *Let this be filed.*
)   *Motion GRANTED*
)   *Royce C. Lamberth, U.S.D.J.*
)   *8/13/12*

**Motion for Leave to File Amicus Letter by the National Association of Criminal Defense
Lawyers in Support of Petitioner Detainees' Motions for Continued Counsel Access**

Date: August 13, 2012

    The National Association of Criminal Defense Lawyers ("NACDL") respectfully moves this Court for leave to file an Amicus Letter in the above styled matter. NACDL has conferred with the parties to this case and no party opposes the filing of this motion. NACDL's amicus letter is attached to this motion.

Respectfully submitted,

/s/ Mason C. Clutter
Mason C. Clutter
D.C. Bar No.: 995813
National Association of Criminal Defense Lawyers
1660 L Street, NW, 12th Floor
Washington, D.C. 20036
mclutter@nacdl.org
(202) 465-7658

**Certificate of Service**

    I hereby certify that a copy of this Motion for Leave to File Amicus Letter by the National Association of Criminal Defense Lawyers was sent to counsel to Respondents, James Gillian, Esq. (James.Gilligan@usdoj.gov), and counsel to Petitioners: Rebecca Briggs (rbriggs@orrick.com), Michael Rapkin (msrapkin@gmail.com); Bill Livingston (wlivingston@cov.com), and Jennifer R. Cowan (jrcowan@debevoise.com) via electronic mail on this 13th day of August 2013.

/s/ Mason C. Clutter
Mason C. Clutter

# National Association of Criminal Defense Lawyers




*Let this be filed.*
*Royce C. Lamberth*
*U.S.D.J. 8/13/12*

**President**
Steven D. Benjamin Richmond, VA

**President-Elect**
Jerry J. Cox Mount Vernon, KY

**First Vice President**
Theodore Simon Philadelphia, PA

**Second Vice President**
E. G. Morris Austin, TX

**Treasurer**
John Wesley Hall Little Rock, AR

**Secretary**
Barry J. Pollack Washington, DC

**Immediate Past President**
Lisa Monet Wayne Denver, CO

**Parliamentarian**
Vicki H. Young San Francisco, CA

**Directors**
Chris Adams Charleston, SC
Brian H. Bieber Coral Gables, FL
Andrew S. Birrell Minneapolis, MN
Alexander Bunin Houston, TX
Ellen C. Brotman Philadelphia, PA
William H. Buckman Moorestown, NJ
Ramon De La Cabada Miami, FL
Jean-Jacques Cabou Phoenix, AZ
Jay Clark Cincinnati, OH
Josh A. Cohen San Francisco, CA
Anthony Cotton Waukesha, WI
Aric M. Cramer St George, UT
Candale C. Crouse Cincinnati, OH
Paul DeWolfe Baltimore, MD
Drew Findling Atlanta, GA
Richard K. Gilbert Washington, DC
Nina J. Ginsberg Alexandria, VA
Elissa Heinrichs Newtown, PA
Michael Heiskell Fort Worth, TX
Bonnie Hoffman Leesburg, VA
Richard S. Jaffe Birmingham, AL
Ashish S. Joshi Ann Arbor, MI
Nellie L. King West Palm Beach, FL
Benjamin R. Labranche Baton Rouge, LA
Tracy Miner Boston, MA
Tyrone Moncriffe Houston, TX
Norman R. Mueller Denver, CO
George H. Newman Philadelphia, PA
Timothy P. O'Toole Washington, DC
Maria H. Sandoval San Juan, PR
Melinda Sarafa New York, NY
David Smith Alexandria, VA
Jeffrey E. Thoma Fairfield, CA
Geneva Vanderhorst Washington, DC
Christopher A. Wellborn Rock Hill, SC
Steven M. Wells Anchorage, AK
Christie N. Williams Dallas, TX
William P. Wolf Chicago, IL

**Executive Director**
Norman L. Reimer Washington, DC

August 13, 2012

Honorable Royce Lamberth, Chief Judge
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

RE:   *In re: Guantanamo Bay Detainee Continued Access to Counsel (Misc. No. 12-0398); Amicus Letter Supporting Petitioner Detainees' Motions for Continued Counsel Access*

Dear Judge Lamberth:

The National Association of Criminal Defense Lawyers ("NACDL") submits this letter in support of Petitioners' Motions for Continued Access to Counsel at the detention facility at Guantanamo Bay, Cuba. NACDL urges this Court to grant Petitioners' motions challenging the Government's Memorandum of Understanding Governing Continued Contact Between Counsel/Translator and Detainee Following Termination of the Detainee's Habeas Case (hereinafter "MOU"). NACDL also encourages this Court to hold that Judge Hogan's Protective Order continues to apply to Petitioners, and that the Government may not condition Petitioners' access to counsel on counsel's submission to the new MOU.

## Interest of Amicus

Amicus curiae the National Association of Criminal Defense Lawyers ("NACDL") is a nonprofit, nonpartisan, professional bar association for public defenders and private criminal defense lawyers across the nation. Founded in 1958, NACDL has a direct national membership of nearly 10,000 attorneys and approximately 28,000 affiliate members from all fifty states.

While the NACDL is an organization whose primary mission is to ensure justice and due process for persons accused of crime, foster the integrity, independence and expertise of the criminal defense profession, and promote the proper and fair administration of criminal justice, NACDL has openly opposed indefinite detention without charge or trial of

the Guantanamo detainees since the opening of the detention facility in 2002. Given that the United States now has a clear policy of indefinite detention without charge or trial at Guantanamo Bay (*See* Executive Order 13,567, 76 Fed. Reg. 13,277 (Mar. 7, 2011)), NACDL finds that continued detention without charge or trial amounts to criminal punishment. In fact, District Court Judge Katherine Forrest seems to agree, and in a recent opinion addressing the indefinite detention provision of the 2012 National Defense Authorization Act noted that criminal law precedent with respect to pre-enforcement challenges applies to indefinite detention because indefinite detention is analogous to a sentence in a criminal case. (*Hedges v. Obama*, WL 1721124, at *18 (S.D.N.Y. May 16, 2012)) ("[T]here can be no doubt that the possibility of indefinite military detention, involving similar deprivation of personal liberty as criminal incarceration, is analogous to a criminal statute.").

Additionally, formed in 1990, NACDL's Ethics Advisory Committee has been consulted by attorneys representing Guantanamo detainees and has issued two significant ethics opinions on representation of Guantanamo detainees. The August 2003 opinion addresses ethical representation of detainees before military commissions. The most recent opinion dated February 19, 2012 addresses the attorney-client privilege, legal mail, and client access issues at the detention facility at Guantanamo Bay, Cuba. It is this policy that most significantly justifies NACDL's interest in this case as NACDL has a strong interest in guaranteeing meaningful access to counsel and effective assistance of counsel to all Guantanamo detainees.

### This Court Should Grant Petitioners' Continued Access to Counsel Motions

Since the creation of the detention facility at Guantanamo Bay, Cuba, there has been an effort on the part of the Government to deny meaningful access to counsel to the detainees being held there. Time and again, the Courts have been called upon to step in and right this wrong. (*See, e.g. Rasul v. Bush*, 542 U.S. 466 (2004); *al Odah v. United States*, 346 F. Supp. 2d 5 (D. D.C. 2004); *Boumediene v. Bush*, 553 U.S. 723 (2008)). The most recent efforts by the government would return the system to its initial stages, in which access to counsel for the vast majority of detainees would be solely at the government's discretion.

After nearly eight years of continued attorney-client access under a working Protective Orders, the Government again seeks to infringe upon this sacred relationship. In the past nine months, the rotating Camp Commanders at the detention facility at Guantanamo Bay, Cuba have issued several MOU's interfering with the attorney-client relationship, in both the criminal and civil contexts. Notwithstanding the Commander's right to "maintain the good order, safety, and security of the facility (Respondent's Combined Opposition to Motions by Detainees for Continued Counsel Access at 24) (hereinafter "Government's Response"), a detainee has the legal right to challenge his continued detention in a meaningful fashion, which requires meaningful access to counsel. This right to and need for counsel neither expands with the existence of a pending case, nor diminishes during any interval between cases.

Counsel cannot contract away his or her client's rights, including the right to effective assistance of counsel, which includes protection of the attorney-client privilege, and the right to zealous advocacy. (NACDL Ethics Advisory Committee Op. 12-02, at 1 (Feb. 2012) (*available at* http://www.nacdl.org/ResourceCenter.aspx?id=6477). An attorney has an ethical and constitutional duty to challenge the substance of administrative orders that prevent a lawyer from

having meaningful communications, and therefore prevent the lawyer from providing competent representation. That includes seeking judicial review and remedies, and/or, if necessary, appropriate protective orders. (*Id.* at 2).

Model Rule of Professional Conduct 1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and *preparation* reasonably necessary for the representation." (emphasis added). Interference with attorney-client access as provided in the MOU greatly hinders an attorney's ability prepare for representation of a detainee client in a future habeas case.

Additionally, as stated in the ABA Code of Professional Responsibility, EC 4-1:

> A client must feel free to discuss whatever he wishes with his lawyer and a lawyer must be equally free to obtain information beyond that volunteered by his client. A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of his independent professional judgment to separate the relevant and important from the irrelevant and unimportant. The observance of the ethical obligation of a lawyer . . . . not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance. (footnotes omitted)

The Government goes to great lengths in its response to assure the Court that the new MOU is "essentially" the same as the Protective Order currently governing these cases, "except as expressly noted otherwise in the MOU." (Government's Response at 12). That argument is without merit. The new MOU is *not* the same as the existing Protective Order and *cannot* be viewed as providing the same rights and access as provided in the Protective Order. The Government's repeated arguments that the MOU does nothing to prevent a detainee from bringing a future habeas petition misunderstands the relationship between the past and future cases, and gravely underrepresents the importance of maintaining the attorney-client relationship.[1]

Further, the Government attempts to distinguish this issue from the issue before this Court in *al Odah*, which held that Guantanamo detainees possess a statutory right to counsel in habeas proceedings. (*al Odah v. United States*, 346 F. Supp. 2d, 5 (D. D.C. 2004)). NACDL finds no difference between this case and the issue before the *al-Odah* Court because in both cases the issue is the right to meaningful representation before a federal court to challenge one's detention and seek his release.

---

[1] The American Bar Association ("ABA") seems to agree. In a letter to the editor, ABA President WM. T. Robinson argued that the new MOU should be "rescinded." "The recent decision by the Obama administration to place onerous conditions and limitations on visits by lawyers with their clients detained at Guantánamo Bay is reminiscent of such ill-advised decisions. Lawyers, who are essential to justice, must be permitted to meet and communicate confidentially with their clients at Guantánamo Bay without government interference or surveillance. Our American legal system is widely recognized as the best in the world. This new policy is not worthy of that system of justice or our legal traditions. It should be rescinded." WM. T. Robinson, Letter to the Editor, N.Y. Times, Aug. 2, 2012, at A20, available at http://www.nytimes.com/2012/08/02/opinion/visits-at-guantanamo.html.

While the government recognizes that Guantanamo detainees may renew their habeas cases and again challenge the legality of their detention in the future (Government's Response at 29), it nevertheless argues that it opposes court-ordered counsel access for detainees who may later seek this relief in the future. (*Id.* at 18). This reflects a grave misunderstanding and denigration of the attorney-client relationship, which requires continued nurturing to maintain client trust, cooperation, and participation, especially when facing indefinite detention for the duration of hostilities where there is no clear end in sight. Indeed, access to counsel is an indispensable aspect of the right to be heard, and to petition the courts for relief.

Instead, the Government proposes to allow "voluntary" attorney-client access at the "unreviewable discretion of the Commanders at Guantanamo and at SOUTHCOM." (MOU at ¶ 8(f)). The MOU essentially invites action from this Court by providing that the MOU does not constitute a waiver of any legal right of counsel access. (MOU at ¶ 10). In other words, this Court must find that Petitioners' have a legal right to continued attorney-client access, or risk the Camp Commander exercising his "unreviewable discretion" to disallow continued and meaningful access. This is simply an attempt by the executive branch to interfere with and override an existing order form the judicial branch. Moreover, NACDL is unaware of any state or federal prison facility that so restricts access to counsel for those inmates whose direct appeals and/or habeas petitions have been subject to final judgment in the courts.

Furthermore, the MOU seriously impairs the attorney's ability to discuss material aspects of a case with his or her client, implicating the client's right to due process. Often the client is an invaluable source of information about facts, witnesses, and other evidence, and material relevant to building a case to bring before a federal court. It is axiomatic that counsel must be able to consult with the client on strategic and tactical matters, including whether or not to pursue a renewed habeas case and an evaluation of the facts and circumstances that lead to such a decision. Moreover, the difficulty of building the necessary relationship of trust and confidence between attorney and client is aggravated in the context of Guantanamo. Given the indefinite nature of detention, this unique situation requires continual, guaranteed attorney-client access for the duration of the detention to ensure that detainees have meaningful access to the courts and effective assistance of counsel. The MOU makes this impossible.

As the American Bar Association Guidelines emphasize in the capital context, "[e]stablishing a relationship of trust with the client is essential both to overcome the client's natural resistance to disclosing often personal and painful facts necessary to present an effective death penalty phase defense …. Even if counsel manages to ask the right questions, a client will not—with good reason—trust a lawyer who visits only a few times before trial, does not send or reply to correspondence in a timely manner, or refuses to take telephone calls." (ABA Guidelines Std. 10.5 comment). Given the indefinite nature of the detention without charge or trial at Guantanamo Bay, Cuba, this Guideline on capital representation has a hauntingly relevant place in this litigation.

Accordingly, this Court's decision on Petitioners' pending motions will affect Guantanamo detainees' rights to meaningful access to the court and effective assistance of counsel for years, even decades, to come. The Government has demonstrated a fundamental misunderstanding of the importance of continued attorney-client access to build an effective case

to later challenge a detainee's continued detention without charge or trial, and seeks to implement an MOU that would undo years of building an imperative attorney-client relationship. For these reasons, Amicus respectfully requests that the Court grant Petitioners' Motions for Continued Counsel Access.

Respectfully submitted,

_____
Joshua L. Dratel, Esq.
Joshua L. Dratel, P.C.
Chair, National Security Committee
National Association of Criminal Defense Lawyers


_____
Mason C. Clutter, Esq.
National Security Counsel
National Association of Criminal Defense Lawyers