**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE GUANTANAMO BAY DETAINEE ) <br> CONTINUED ACCESS TO COUNSEL ) <br> _____) | Misc. No. 1:12-mc-00398-RCL |
| **FADHEL HUSSEIN SALEH HENTIF**, *et al.*,  ) <br>    ) <br>    *Petitioners*,    ) <br>    ) <br>    *v.*    ) <br>    ) <br> **BARACK H. OBAMA**, *et al.*,    ) <br>    ) <br>    *Respondents*.    ) | Civil No. 1:06-cv-01766-UNA |
| **ABDURRAHMAN ABDALLAH ALI** <br> **MAHMOUD AL SHUBATI**, *et al.*,  ) <br>    ) <br>    *Petitioners*,    ) <br>    ) <br>    *v.*    ) <br>    ) <br> **BARACK H. OBAMA**, *et al.*,    ) <br>    ) <br>    *Respondents*.    ) | Civil No. 1:07-cv-2338-UNA |

**EMERGENCY MOTION TO ENFORCE THE RIGHT OF ACCESS TO COUNSEL AND POINTS AND AUTHORITIES IN SUPPORT**

On behalf of our clients Abdurrahman al-Shubati, ISN No. 224, and Fahdel Hentif, ISN No. 259, we seek this Court's intervention to preserve and protect their right of access to counsel. In particular, we seek an order from this Court preventing the Joint Task Force from using threats of invasive searches of the genital and anal areas, in violation of our clients' religious beliefs, and physically painful transportation methods, to discourage our clients' from

meeting with us in person or speaking with us on the telephone.[1]  This motion is based on similar conduct and seeks analogous relief to that which will be sought by a motion to be filed this same day by Saeed Hatim, ISN No. 255, and joined by several other detainees.

## I.     Background.

More than 100 detainees at the military facility in Guantanamo Bay, Cuba are now on hunger strike.  Carol Rosenberg, *Guantanamo Hunger Strike Tally Hits 102*, Miami Herald (May 16, 2013), *available at* http://www.miamiherald.com/2013/05/16/3401521/guantanamo-hunger-strike-tally.html.  The strike has brought worldwide attention again to the suffering of the men being held indefinitely at Guantanamo without charge, in particular those who were cleared for release or transfer years ago, after exhaustive military and intelligence review, but nonetheless remain detained.  *See Final Report Guantanamo Review Task Force* (2010), *available at* http://www.justice.gov/ag/guantanamo-review-final-report.pdf.

The existence of the hunger strike, and the human misery and desperation motivating it, have become widely known in part because the detainees have been able to communicate their circumstances to and through their counsel.  *See* Sami Jaji al Hasan Moqbel, *Gitmo Is Killing Me*, N.Y. Times (Apr. 14, 2013) (reprinting the content of a telephone conversation between a hunger striking detainee and his counsel);[2] Joe Nocera, *The Detainee's Dilemma*, N.Y. Times (Apr. 29, 2013) (discussing facts derived from a call between Hentif, a hunger striking detainee, and counsel).[3]

---

[1] We have conferred with opposing counsel and they have informed us that they will oppose this motion.

[2] *Available at* http://www.nytimes.com/2013/04/15/opinion/hunger-striking-at-guantanamo-bay.html?_r=0.

[3] *Available at* http://www.nytimes.com/2013/04/30/opinion/nocera-the-detainees-dilemma.html.

After the hunger strike gained international notoriety, the prison administration elected to institute new invasive search procedures for detainees who want to meet with counsel or have telephone contact with their counsel or family. Rushforth Declaration ("Rushforth Dec.") ¶¶ 6-7. United States soldiers are now authorized to grope the genital and anal regions of any detainee that must leave Camps 5 or 6 where they are housed, and base authorities now require detainees to leave their camps to attend attorney meetings or take attorney phone calls. *Id.* ¶ 6; *see also id.* ¶ 13 (explaining counsel visits previously occurred in Camps 5 and 6). This is a humiliating exercise that is unacceptable to devout Muslim detainees, including our clients.[4] *Id.* ¶ 8. Further, to be transported to different camps for their meetings or calls, prisoners now must ride in a van where they are shackled to the floor, remaining bent at the waist. *Id.* ¶ 6. This stressful position is particularly painful for someone on a hunger strike and thus malnourished. *Id.*

The new search procedures are purportedly designed to uncover contraband that would somehow spring into existence on the bodies of prisoners who, for practical matter, are currently in solitary confinement and whose cells are searched daily. One cannot conceive of any justification for the new transportation policies. The policies have, predictably, not had the effect of discovering contraband.

Regardless, whatever justifications the government may put forward for the policies, they will be pretextual. This is evident from the timing of the policies and from the fact that attorney-

---

[4] The base authorities were fully aware before instituting this policy that it would be unacceptable to the detainees, as a Department of Defense review of Guantanamo operations in 2009 made that very finding. Department of Defense, *Review of Department Compliance with Presidents' Executive Order on Detainee Conditions of Confinement* 49 & n.39 (2009) (explaining humiliating conditions can violate international law, and positively noting that guards could not recall "full strip search[es]" being used), *available at* http://www.defense.gov/pubs/pdfs/REVIEW_OF_DEPARTMENT_COMPLIANCE_WITH_PRESIDENTS_EXECUTIVE_ORDER_ON_DETAINEE_CONDITIONS_OF_CONFINEMENTa.pdf.

client meetings could be, and have historically been, held in Camps 5 and 6, obviating any need to search or transport the detainees. Rushforth Dec. ¶ 13; *see also id.* (agreeing to hold future meetings in Camp 5 or 6). There is no reason why telephone calls with counsel cannot also be conducted from Camps 5 and 6, again obviating any need for invasive searching or physically punishing transport. *See id.* The new polices truly are an intentional, calculated effort by the government to cut-off attorney access and thereby silence the detainees, inhibiting negative press reports on the hunger strike and the unlawful confinement and conditions that persists at Guantanamo.[5] Rushforth Dec. ¶ 7.

## II. Argument.

These new restrictions are interfering with the attorney-client relationship. Our clients have refused to take our phone calls because of these new search and transportation policies.[6] Rushforth Dec. ¶¶ 4-6. This is the first time in the eight years that attorney Brent Rushforth has represented al-Shubati that al-Shubati has refused contact with his attorneys. *Id.* ¶¶ 4-5. Thus, the only conclusion we can draw is that the new polices resulted in this refusal. *Id.* ¶¶ 5-6.

We have several other contacts with our client's scheduled in the near future, including another phone call and an in-person visit. *Id.* ¶¶ 9-10. However, based on a specific

---

[5] In addition to the hunger strike, base authorities are no doubt sensitive to the recent findings by the United Nations Special Rapporteur on Torture that continued detention at Guantanamo, without charge "itself constitutes a form of cruel, inhuman, and degrading treatment." United Nations, *Amid Hunger Strike, UN Rights Experts Urge US to Close Down Guantanamo Detention Facility* (May 1, 2013), *available at* http://www.un.org/apps/news/story.asp?NewsID=44801&Cr=guant%C3%A1namo&Cr1=#.UZzII0qGfgo.

[6] We understand from counsel for other detainees that the new policies have also resulted in detainees refusing to be transported to medical check-ups and even telephone calls with their families. This demonstrates the efficacy of the new policies.

communication from one of our clients,[7] and our years of prior experience with our clients, as well as information we have received from other attorneys, we have strong reason to believe all of these contacts will be declined until the threat of invasive searches and painful transportation are removed. *Id.* ¶¶ 8-9.

As this Court is well aware, habeas counsel's communications with the detainees has been challenging from the start. Only through telephone calls and in-person meetings can we consult with our clients regarding their legal rights. The need for consultation is especially acute now given the hunger strike. We must have reliable access to our clients to evaluate whether they are being subjected to unlawful treatment and are receiving all necessary medical attention. Rushforth Dec. ¶ 11. Moreover, Hentif currently has an appeal pending before the United States Court of Appeals for the District of Columbia Circuit. *Id.* The new restrictions have prevented us from communicating with him and from discussing issues of legal strategy relating to his appeal. *Id.* Communication via letter, the only remaining option, is an unacceptable substitute. *Id.* ¶ 12.

The Government's policies contravene the decisions of this Court. They represent yet another attempt by the government to "unilaterally impose procedures that abrogate the attorney client relationship." *In re Guantanamo Bay Continued Access to Counsel*, Misc. No. 12-398, Document No. 1009, at 32 (Sept. 6, 2012) (quoting *Al Odah v. United States*, 346 F. Supp. 2d 1, 5 (D.D.C. 2004)) (internal quotation marks omitted). This Court has recognized that "[i]n the

---

[7] As discussed in the attached declaration, we have not enclosed a communication from our client related to the new policies regarding access to counsel based on his privacy concerns and a concern that we not inadvertently waive the attorney-client privilege. Rushforth Dec. ¶ 14. We respectfully request that this Court allow us to file the letter under seal. We further request that opposing counsel stipulate that our disclosure of the communication in these circumstances will not be used as a basis to argue waiver.

5

case of Guantanamo detainees, access to the courts means nothing without access to counsel." *Id.* at 32. Moreover, the "Supreme Court has zealously guarded against policies that threaten prisoners' ability to effectively challenge their detention." *Id.* at 12 (discussing *Ex Parte Hull*, 312 U.S. 546, 549 (1941)). Yet, rather than respecting this Court's request, that "if it ain't broke, don't fix it"—particularly in regards to "a counsel-access regime that has proven safe, efficient, and eminently workable"—under the guise of unfounded safety concerns the government has attempted to manipulate the existing system for access to counsel to make it non-functional. *Id.* at 12. If allowed to stand, the policies will effectively "usurp the judiciary's duty to ensure access to the courts" and "take[] from the courts the power to adjudicate controversies relating to" access to counsel and the habeas claims of the detainees themselves. *Id.* at 15.

Therefore, we respectfully request that this Court order that counsel be able to meet and speak with their clients without their clients being subject to threats of invasive bodily searches or painful transportation. This may occur either through the Joint Task Force allowing counsel visits and phone calls to occur in Camps 5 and 6, so that no searches or transportation are required prior to, during, or following the visit or call; or through the Joint Task Force removing their existing policies and allowing visits and phone calls to proceed as they did for years under the prior regime.

The attorney client relationship and its preservation and protection, are the province of this court, not of the Guantanamo base authorities. The new polices represent nothing less than open defiance of this Court's recent decisions upholding attorney access to detainees and should not be permitted to stand.

Date: May 22, 2013						Respectfully submitted,

								/s/ *Brent Nelson Rushforth*

								Brent Nelson Rushforth
								D.C. Bar No. 331074
								David Muraskin
								McKool Smith, P.C.
								1999 K Street, N.W., Suite 600
								Washington, DC 20006
								(202) 370-8300

								Robert L. Palmer
								McKool Smith Hennigan P.C.
								865 S. Figueroa Street, Suite 2900
								Los Angeles, CA 90017
								(213) 694-1200

								M. Alexander Bowie, II
								D.D.C. Bar No. NY0116
								Day Pitney LLC
								7 Times Square
								Broadway Between 41St & 42nd Streets
								New York, NY 10036
								(212) 297-5800

								James G. Szymanski
								Law Office of James G. Szymanski
								6234 Annello Drive
								Melbourn, FL 32940
								(321) 255-4789


								*Counsel for Petitioners Abdurrahman al-Shubati and Fahdel Hentif*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2013, I electronically filed the foregoing with the Clerk of the United States District Court for the District of Columbia Circuit by using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

>Rodney Patton
>Andrew Warden
>Robert Prince
>Civil Division
>U.S. Department of Justice
>Federal Programs Branch, Civil Division
>20 Massachusetts Avenue, N.W., Rm. 5124
>Washington, D.C. 20001
>(202) 616-5084

May 22, 2013

/s/ Brent Nelson Rushforth
BRENT NELSON RUSHFORTH

Brent Nelson Rushforth
David Muraskin
McKool Smith, P.C.
1999 K Street, NW, Suite 600
Washington, DC 20006
(202) 370-8300

Robert L. Palmer
McKool Smith Hennigan, P.C.
865 S. Figueroa Street, Suite 2900
Los Angeles, CA 90017
(213) 694-1200

*Counsel for Petitioners Abdurrahman al-Shubati and Fahdel Hentif*