**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
**SAEED MOHAMMED SALEH**       )
**HATIM**, *et al.*,                         )
                                              )
    *Petitioners*,                      )
                                              )   **Civil Action No. 05-1429 (RCL)**
    *v.*                                 )
                                              )
**BARACK H. OBAMA**, *et al.*,               )
                                              )
    *Respondents*.                       )
_____ )


_____
                                              )
**IN RE:**                                    )   **Misc. No. 12-398 (RCL)**
**GUANTÁNAMO BAY**                            )
**DETAINEE CONTINUED**                        )
**ACCESS TO COUNSEL**                         )
_____ )

**EMERGENCY MOTION CONCERNING ACCESS TO COUNSEL**

This motion is filed on behalf of Saeed Mohammed Saleh Hatim (ISN 255) in Civil Action No. 05-1429 (RCL), in order to remove unjustified burdens that the Government has imposed on his right to access to counsel. This motion is also being filed in *In re: Guantanamo Bay Detainee Continued Access to Counsel*, Miscellaneous Docket No. 12-398 (RCL), on behalf of certain other detainees who have suffered similar impositions on their right to access to counsel, or who are potentially affected by the existence of these new obstacles to counsel access. The cases involving these other detainees are listed in the footnote below.[1]

---

[1] *Abdullah v. Bush*, Civ. No. 05-0023 (RWR) (D.D.C.); *Al-Baidany v. Obama,* Civ. No. 05-02380 (CKK) (D.D.C.); *Al-Bihani v. Obama*, Civ. No. 05-1312 (RJL) (D.D.C.); *Alhag v. Obama*, Civ. No. 05-2199 (RCL) (D.D.C.); *Al-Mithali v. Obama*, Civ. No. 05- 2186 (D.D.C.); *Al-Zarnouqi v. Obama*, Civ. No. 06-1767 (RCL) (D.D.C.); *Anam v. Obama*, Civ. No. 04-1194 (continued…)

The need for relief is urgent because various counsel are seeking to meet or talk by telephone with their clients in the near future.

**BACKGROUND**

Most Guantánamo detainees are held in two closely-adjacent prisons, known as Camp 5 and Camp 6. (The so-called "high value" detainees are held in a separate facility.) Historically, counsel have met with their clients either in Camp 5 or Camp 6, *i.e.*, in the prisons where they are being held, or in a separate nearby facility known as Camp Echo. Ex. A, Declaration of David H. Remes, ¶ 5 ("Remes Dec."). Camp Echo contains huts where meetings between detainees and counsel can take place. Compared to meetings in Camp Echo, meetings with counsel in Camp 5 or Camp 6 are more convenient for the detainee and the prison staff because they do not require that the detainee be transported by van from his prison camp to Camp Echo. Detainees have telephone calls with their lawyers in another facility, Camp Delta. *Id.*

Counsel for Hatim travelled to Guantánamo in late April 2013, to meet with Hatim and other clients. Ex. A, Remes Dec. ¶ 9. The meeting with Hatim was to take place on May 1, two days before a prehearing conference in Hatim's habeas case. Among other things, counsel intended to consult with Hatim concerning his newly-reactivated habeas case. *Id.* The Government scheduled the meeting for Camp Echo, which would require that Hatim be transported by van from his cell in Camp 6. Hatim reported that he would meet with counsel in Camp 6, but not at Camp Echo. *Id.* ¶ 10. Counsel was ready, willing and able to meet Hatim in

---

(TFH) (D.D.C.); *Al Qyati and Al Azani v. Obama*, Civ. No. 08-2019 (RBW) (D.D.C.); *Al Warafi v. Obama*, Civ. No. 09-2368 (RCL) (D.D.C.); *Hidar v. Obama*, Civ. No. 05-2386 (RBW) (D.D.C.); *Mohammed v. Obama*, Civ. No. 05-2385 (UNA) (D.D.C.); *Obaydullah v. Obama*, Civ. No. 08-01173 (RJL) (D.D.C.); *Odah v. Obama*, Civ. No. 06-1668 (TFH) (D.D.C.); *Sanad al-Kazimi v. Obama*, Civ. No. 05-2386 (RBW) (D.D.C.).

Camp 6, but the Government refused, stating that it would not allow meetings in Camp 6 "in any circumstances." *Id.* ¶¶ 11–12.

The Government neither then nor now has provided any justification for its refusal to allow Hatim to meet with his counsel in Camp 6, which constituted a reversal of long-standing practice.

As explained below, detainees have substantial reasons for not meeting in Camp Echo, and it is now clear that many detainees will forgo counsel access rather than meet in Camp Echo or have telephone calls in Camp Delta.

First, as has widely been publicized, there is an ongoing hunger-strike at Guantánamo, involving up to two-thirds of the non-"high value" detainees. As a result, many of the prisoners are physically weak and debilitated; indeed, at least 30 have gotten so close to death that they are being force-fed through a tube shoved through the nose and down into the stomach. *See* Exs. A–G. (declarations of detainees' counsel). In these conditions, a trip to Camp Echo or Camp Delta in a van may be so painful that a detainee will decline to speak with counsel rather than to take the trip to Camps Echo or Delta. The Government has recently made the trip even more painful because it has begun using a smaller van, which forces the detainee, while shackled, to be in a crouched stress position. Ex. A, Remes Dec. ¶¶ 29–34; Ex. G, Declaration of Anne Richardson ("Richardson Dec.") ¶ 9.

Second, and perhaps more importantly, the procedure for a trip to Camp Echo has recently been changed in a highly significant way. Under the new policy, any trip to Camp Echo (or Camp Delta) requires an intrusive body search of the detainee, which involves touching and holding a detainee's genitals and buttocks. Ex. A, Remes Dec. ¶¶ 14–18. Detainees are searched in this manner at least twice for each trip that they take from Camp 5 or Camp 6, and a guard told

one detainee that he would be subjected to four genital searches for each trip to Camp Echo or Camp Delta to talk with his lawyer.  Ex. B, Declaration of Jennifer R. Cowan ("Cowan Dec."), ¶¶ 7–8, 12.  The Government had previously recognized that such searches offend and humiliate Islamic detainees and had banned them at Guantánamo:  "Due to cultural sensitivities, modified frisk searching procedures are in place that respect the detainee's groin area, and guards are not allowed to conduct frisk searches of this area.  Guards are limited to grasping the waistband of detainees' trousers, and shaking the pants." Ex. A, Remes Dec. ¶ 37 (quoting Review of Department Compliance with President's Executive Order on Detainee Conditions of Confinement, at 25 (2009)). The new search procedure, however, "does include the buttocks and groin area" and applies whenever a prisoner leaves his camp to go to another facility, such as Camp Echo or Camp Delta.[2]  It is obvious that the new search procedures, another reversal of long-standing practice, are intended to be an obstacle to counsel access.  *See* Ex. A, Remes Dec. ¶¶ 15–18; Ex. B, Cowan Dec. ¶¶ 10–16; Ex. C, Declaration of Erin Thomas ("Thomas Dec.") ¶ 9; Ex. D, Declaration of Darold W. Killmer ("Killmer Dec.") ¶¶ 7, 13–14.

The new Government policies that resulted in denial of counsel access with respect to Hatim have also resulted in a denial of counsel access for numerous other detainees, who have been unwilling to be transported to Camp Echo for meetings or to Camp Delta for telephone

---

[2] *See* Ex. H, Leopold, J., *Al Jazeera,* "New Guantanamo Policy: Genital 'Pat Down,'" May 15, 2013, *available at* http://m.aljazeera.com/story/201351583142509183.  Detainees who refuse to endure these searches will not be allowed to consult with their attorneys in meetings or by phone, and a Guantánamo spokesman has reportedly admitted that "several prisoners have cited the new policy as the reason they refuse to meet with their attorneys." *Id.*; *see also* Lt. Col. Samuel House *quoted in* Ex. I, P. Harris & M. Williams, "Guantanamo Strikers Threatened with Body Cavity Searches, Lawyer Says," *The Guardian*, May 24, 2013, *available at* http://www.guardian.co.uk/world/2013/may/14/Guantanamo-hunger-strikers-body-search?INTCMP=ILCNETTXT3487 ("If a detainee refuses to be searched as part of a routine move outside of a camp, such as for a phone call, legal appointment or non-emergency medical appointment, the guard will not take the detainee.").

4

calls, especially given the new body-search protocols. For instance, one lawyer reports that her client is unable to go to Camp Delta for a telephone call with her because, if he does, "they will search the private parts and the anal area." Ex. E, Declaration of Rebecca Briggs ("Briggs Dec.") ¶¶ 6–7. Other lawyers have had similar experiences with their clients, as described in detail in their attached declarations. *See* Ex. B, Cowan Dec. ¶¶ 11–13; Ex. A, Remes Dec. ¶¶ 13–15 (recounting a meeting refused by detainee Mukhtar al-Warafi); Ex. F, Declaration of John C. Snodgrass ("Snodgrass Dec.") ¶¶ 5–6 (recounting telephone call refused by a detainee who had never previously refused a call in the eight years that the attorney has represented him); Ex. C, Thomas Dec. ¶¶ 7–12 (detailing telephone calls with client terminated because client unwilling to submit to physical search of private areas); Ex. G, Richardson Dec. ¶¶ 16–18 (describing barriers to counsel access resulting from requiring meetings and calls to be in Camp Echo and Camp Delta, and the chilling effect of the new policy with respect to physical searches); Ex. D, Killmer Dec. ¶¶ 6–12 (describing new policies at Guantánamo that are designed to interfere with counsel access, and the refusal of a client call as a result).

## ARGUMENT

As this Court has held, "it is undisputed that petitioners here have a continuing right to seek habeas relief. It follows that petitioners have an ongoing right to access the courts and, necessarily, to consult with counsel." *In re: Guantanamo Bay Detainee Continued Access to Counsel*, 892 F. Supp. 2d 8, 28 (D.D.C. 2012) ("*Counsel Access*"). The Court noted that "the Government agrees that 'the right to counsel attaches to the prisoner's right of access to the courts," and that "[t]he Government has conceded that petitioners here have a right to counsel." *Id.* at 13 n.9, 15 n.10. The Government ultimately declined to appeal this Court's *Counsel Access* decision.

Counsel's access to detainees, if anything, has become even more critical because of the hunger strike. Access to counsel "is particularly necessary where a detainee's life and health are in serious danger." *See Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 23 (D.D.C. 2005). "[I]n order to properly represent Petitioners, their counsel must have access to them, must be able to communicate with them, and must be made aware if their clients are in such fragile physical condition that their future ability to communicate is in imminent danger." *Id.* at 21–22.

The Government's newly-adopted policy of denying detainees the ability to meet with counsel at Camp 6, along with its newly-adopted requirement for highly intrusive physical searches that it knows are culturally and religiously insulting as a precondition for counsel access, and its new use of low roof vans, have resulted in cancellation of meetings and phone calls with counsel in many cases, including Hatim's. This could not have come as a surprise to the Government, especially since it is well aware of the weakened condition of the majority of the detainees due to the hunger strike. Even assuming that there are any legitimate justifications for these new policies—and none is apparent—they would not come close to outweighing the burden the policies place on the detainees' paramount constitutional right to effective and meaningful access to counsel.[3]

The inescapable inference, however, is that the new policies have no legitimate purpose, but are pretextual, imposed in order to chill the right of access to counsel. Indeed, one guard has admitted that the purpose of the physical searches and the treatment inflicted upon detainees

---

[3] This is not the first time that the Government has interfered with counsel access. For instance, in a case before Judge Walton, the Government in 2008 falsely stated that a detainee was refusing to meet with counsel. Ex. D, Killmer Dec. ¶ 14. Judge Walton ordered the Government to provide an "expeditious, unobstructed, face-to-face meeting" with the detainee. Order Granting Petitioners' Counsel An Expeditious, Unobstructed, Face-to-Face Visit with Petitioners Saad Massir Mukbl Al Azani (ISN 575) and Abdul Rahman Umir Al Qyati (ISN 461), at 1, *Al Qyati v. Obama*, Civ. No. 08-2019 (RBW) (D.D.C. May 5, 2009).

...
during transportation from their cells was to deter detainees from speaking with their counsel or their families. *See* Ex. D, Killmer Dec. ¶ 7. These new procedures come on the heels of an attempt to deny counsel access to any detainee without an active habeas petition, an attempt rejected by this Court last September in its *Counsel Access* decision. It also follows "[t]he government's decision to hold legal mail" in some cases "*without notifying the Court or petitioners' counsel*" and its attempt to curtail flights to Guantánamo. Order, *Al-Zarnouqui v. Obama*, No. 06-CV-01767 (D.D.C. May 6, 2013) (Lamberth, C.J.) (emphasis in the original). The true purpose of the new policies is also revealed by the other changes that have recently been imposed on the detainees by the new hard-line regime at Guantánamo, including solitary confinements. Ex. A, Remes Dec. ¶ 38 and Attachment D thereto. It seems clear that the real aim of the new policy on body searches and the requirement to use only Camp Echo for meetings (thus requiring a painful trip in a van, while shackled and in a stress position) is to reduce significantly detainees' access to counsel and to the outside world. In any case, that is its effect.

The Court in its *Counsel Access* decision refused to "countenance placing the 'operational needs and logistical constraints' at Guantánamo ahead of detainees' constitutional right to access to counsel," and emphatically stated that it would not "allow the Government to transgress on the Court's duty to safeguard individual liberty by 'calling the jailer to account.'" *Counsel Access*, 892 F. Supp. 2d at 16, 24 (quoting *Boumediene v. Bush*, 553 U.S. 723, 745–46 (2008)). If detainees' right to meaningful access to counsel is to be preserved, it is essential for this Court to intervene once again.

## CONCLUSION

Petitioners respectfully request that the Court rule that detainees be allowed to meet with their counsel in Camp 5 or Camp 6, and to make telephone calls from those locations, and to do

so without having to undergo the newly-adopted physical searches of private areas. This request for relief is an urgent one in view of the number of counsel and detainees whose access is now being effectively blocked by the Government's new policies.[4]

---

[4] Counsel has conferred with Government counsel concerning this motion pursuant to Local Rule 7(m). The Government states that it opposes the motion.

| | |
|---|---|
| Date: May 22, 2013 | Respectfully submitted, |
| | /s/ *Brian E. Foster* |
| | S. William Livingston<br>D.C. Bar No. 59005<br>Brian E. Foster<br>D.C. Bar No. 988311<br>Emily White<br>D.C. Bar No. 1004811 |
| | COVINGTON & BURLING LLP<br>1201 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20004-2401<br>(202) 662-6000 (phone)<br>(202) 778-6000 (fax)<br>wlivingston@cov.com<br>bfoster@cov.com<br>ewhite@cov.com |
| | David H. Remes<br>D.C. Bar No. 370372<br>APPEAL FOR JUSTICE<br>1106 Noyes Drive<br>Silver Spring, MD  20910<br>(202) 669-6508 (phone)<br>remesdh@gmail.com |
| | *Counsel for Saeed Mohammed Saleh Hatim*<br>*Counsel for Mukhtar Yahia Naji Al Warafi* |

| | |
|---|---|
| Rebecca Briggs<br>Orrick, Herrington & Sutcliffe LLP<br>51 West 52nd Street<br>New York, NY 10019<br>(212) 506-5000 (phone)<br>(212) 506-5151 (fax)<br>rbriggs@orrick.com | Jennifer Rose Cowan<br>Debevoise & Plimpton LLP<br>919 Third Avenue<br>New York, New York 10022<br>(212) 909-6000 (phone)<br>jrcowan@debevoise.com |
| *Counsel in Al-Baidany v. Obama, Civ. No. 05-02380 (CKK) (D.D.C.)* | *Counsel in Al-Mithali v. Obama, Civ. No. 05-2186 (D.D.C.)* |

Pardiss Kebriaei (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6452 (phone)
(212) 614-6499 (fax)
pkebriaei@ccrjustice.org

*Counsel in Al-Bihani v. Obama, Civ. No. 05-1312 (RJL) (D.D.C.) and Odah v. Obama, Civ. No. 06-1668 (TFH) (D.D.C.)*

Peter B. Ellis
Mass. BBO #153500
Andrew Loewenstein
Mass. BBO #648074
Foley Hoag LLP
155 Seaport Blvd.
Boston, Massachusetts 02210-2600
(617) 832-1000 (phone)
(617) 832-7000 (fax)

Usha-Kiran K. Ghia
Mass. BBO#: 666711
Foley Hoag LLP
1717 K Street, NW
Washington, D.C. 20036-5342
(202) 223-1200 (phone)
(202) 785-6687 (fax)

*Counsel in Hidar v. Obama, Civ. No. 05-2386 (RBW) (D.D.C.)*

John C. Snodgrass
D.C. Bar No. 473864
PEPPER HAMILTON LLP
Hamilton Square
600 14th Street NW, Suite 500
Washington, DC 20005-2004
(202) 220-1246 (phone)
snodgrassj@pepperlaw.com

*Counsel in Alhag v. Obama, No. 05-CV-2199 (RCL) (D.D.C.)*

Anne Richardson, Esq. (*pro hac vice*)
Dan Stormer, Esq.  (*pro hac vice*)
Cindy Pánuco, Esq. (*pro hac vice*)
HADSELL  STORMER  RICHARDSON  &  RENICK, LLP
128 North Fair Oaks Avenue
Pasadena, California 91103-3645
(626) 585-9600 (phone)
(626) 577-7079 (fax)
Ranjana Natarajan, Esq. (*pro hac vice*)
National Security Clinic
University of Texas School of Law
727 East Dean Keeton St.
Austin, TX 78705
(512) 232-3657 (phone)
(512) 232-0800 (fax)
Lisa R. Jaskol, Esq. (*pro hac vice*)
Public Counsel
610 S. Ardmore Avenue
Los Angeles, California 90005
(213) 637-3851(phone)
(213) 385-9089 (fax)

*Counsel in Obaydullah v. Obama, Civ. No. 08-01173 (RJL) (D.D.C)*

Darold W. Killmer
Mari Newman
KILLMER, LANE & NEWMAN, LLP
1543 Champa St., Suite 400
Denver, CO 80202
(303) 571-1000 (phone)
(303) 571-1001 (fax)

*Counsel in Anam et al. v. Obama, Civ. No. 04-1194 (TFH) (D.D.C.) and Al Qyati and Al Azani v. Obama, Civ. No. 08-2019 (RBW) (D.D.C.)*

Charles H. Carpenter
D.C. Bar No. 432004
CARPENTER LAW FIRM plc
210 North Higgins Avenue, Ste. 336
Missoula, Montana 59802
(406) 543-0511 (phone)

Stephen M. Truitt
D.C. Bar No. 13235
600 Fourteenth Street, N.W.
Suite 500, Hamilton Square
Washington, DC 20005-2004
(202) 220-1452 (phone)
(202) 220-1665 (fax)

*Counsel in Abdullah v. Bush, Civ. No. 05-0023 (RWR) (D.D.C.)*

Erin E. Thomas (*pro hac vice*)
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 610-6300 (phone)

*Counsel in Anam v. Obama, Civ. No. 04-1194 (TFH) (D.D.C.)*

Brian J. Neff
SCHIFF HARDIN LLP
666 Fifth Avenue
New York, New York 10103
(212) 753-5000 (phone)
(212) 753-5044 (fax)
bneff@schiffhardin.com

Lisa M. Natter
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, Illinois 60606
(312) 258-5500 (phone)
(312) 258-5600 (fax)
lnatter@schiffhardin.com

Beth D. Jacob
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7800
(212) 808-7897

Barbara A. Miller
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400,
3050 K Street, NW
Washington, D.C. 20007
(202) 342-8571

*Counsel in Al-Zarnouqi v. Obama, Civ. No. 06-1767 (RCL) (D.D.C.)*

Geoffrey P. Eaton
Lauren B. Schuttloffel
D.C. Bar No. 494748
Winston & Strawn LLP
1700 K Street, NW
Washington, DC 20006
(202) 282-5000 (phone)
(202) 282-5100 (fax)
geaton@winston.com
lschuttloffel@winston.com

Gregory A. McConnell
Kimball R. Anderson
Benjamin P. Carr
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
(312) 558-5600 (phone)
(312) 558-5700 (phone)
gmcconnell@winston.com
kanderso@winston.com
bcarr@winston.com

*Counsel in Mohammed v. Obama, Civ. No. 05-2385 (UNA) (D.D.C.)*

Martha Rayner
Associate Clinical Professor of Law
Fordham University School of Law
Lincoln Square Legal Services
33 West 60th Street, 3d Floor
NY NY 10023
212-636-6941

*Counsel in Sanad al-Kazimi v. Obama, Civ. No. 05-2386 (RBW) (D.D.C.)*

## **CERTIFICATE OF SERVICE**

    I certify that a true and correct copy of Petitioners' Emergency Motion Concerning Access to Counsel, Proposed Order Granting Petitioners' Emergency Motion Concerning Access to Counsel, Exhibits A through I, and all attachments thereto were served today upon counsel of record via the CM/ECF system.

Date: May 22, 2013                                           Respectfully submitted,

                                                                         /s/ *Brian E. Foster*
                                                                       Brian E. Foster
                                                                       D.C. Bar No. 988311
                                                                       COVINGTON & BURLING LLP
                                                                       1201 Pennsylvania Avenue, N.W.
                                                                       Washington, D.C. 20004-2401
                                                                       (202) 662-6000 (phone)
                                                                       (202) 778-6000 (fax)
                                                                       bfoster@cov.com