UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: GUANTANAMO BAY DETAINEE CONTINUED ACCESS TO COUNSEL | ) ) ) Misc. No. 1:12-mc-398 (RCL) ) ) |

## MOTION OF JASON LEOPOLD TO INTERVENE

Jason Leopold, a representative of the news media, respectfully moves this Court, pursuant to Federal Rules of Civil Procedure 24 and Local Civil Rule 7(j), for permission to intervene in this proceeding for the limited purpose of enforcing the public's right of access to a court record. Specifically, Mr. Leopold requests an order from the Court unsealing the declaration of Col. Bogdan, which was filed under seal by the government on June 3, 2013 as an attachment to its Opposition to Petitioners' Emergency Motions Concerning Access to Counsel. [Case 12-mc-398, dkt: 42.] Alternatively, Mr. Leopold requests that the government be ordered to file a partially redacted, public version of the declaration.

Respectfully Submitted,

 /s/ Jeffrey Light

   Jeffrey L. Light
   D.C. Bar #485360
   1712 Eye St., NW
   Suite 915
   Washington, DC 20006
   (202)277-6213
   Jeffrey.Light@yahoo.com

   *Counsel for Proposed Intervenor*
   *Jason Leopold*

1

**CERTIFICATE PURSUANT TO LCvR 7(m)**

  Counsel for the respondent, Mr. Terry M. Henry, stated: "The government takes no position on your anticipated motion to intervene for the limited purpose you propose. To the extent your request also seeks our position on a motion to unseal or for a redacted version of the declaration of Col. Bogdan, at present, we are reserving our position on that matter." Mssrs. Stephen Truitt and Michael Rapkin, counsel for petitioner Mohammed Rajeb Abu Ghanem, stated that they do not oppose this motion. Mssrs. Brian Foster and David Remes, counsel for the petitioners Yaseim Khasem Mohammad Esmail and Uthman Abdulrahim Moha Uthman, stated that they consent to this motion. Ms. Jennifer Cowan, counsel for petitioners Abdu Al-Qader Hussai Al-Mudafari and Hayil Aziz Ahmed Al-Mithali, stated that she consents to this motion. Ms. Rebecca Briggs, counsel for petitioner Zakaria Al-Baidany, has not responded to e-mail and voicemail requesting consent left by the undersigned on July 11 and 12, 2013.

                  /s/ Jeffrey Light  
                 Jeffrey L. Light  
                 D.C. Bar #485360  
                 1712 Eye St., NW  
                 Suite 915  
                 Washington, DC 20006  
                 (202)277-6213  
                 Jeffrey.Light@yahoo.com

                 *Counsel for Proposed Intervenor*  
                 *Jason Leopold*

**CERTIFICATE OF SERVICE**

  A copy of the foregoing **MOTION OF JASON LEOPOLD TO INTERVENE** has been served on all parties of record via the CM/ECF system this 13th day of July, 2013.

                  /s/ Jeffrey Light  
                 Jeffrey L. Light  
                 D.C. Bar #485360  
                 1712 Eye St., NW  
                 Suite 915  
                 Washington, DC 20006  
                 (202)277-6213  
                 Jeffrey.Light@yahoo.com

                 *Counsel for Proposed Intervenor*  
                 *Jason Leopold*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: GUANTANAMO BAY DETAINEE CONTINUED ACCESS TO COUNSEL | ) ) ) ) ) ) Misc. No. 1:12-mc-398 (RCL) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF JASON LEOPOLD TO INTERVENE**

Proposed Intervenor Jason Leopold is an investigative reporter. Mr. Leopold spent three and a half years as lead investigative reporter of Truthout.org, a nonprofit newsroom, and is now a regular contributor to Al Jazeera English, where he covers Guantanamo, national security, counterterrorism, civil liberties, human rights and open government issues. Additionally, he is the editor-at-large for The Public Record. His reporting has appeared in The Nation, The Wall Street Journal, The Financial Times, Salon, CBS Marketwatch, The Los Angeles Times and numerous other domestic and international publications.

As a representative of the news media, Mr. Leopold seeks to intervene pursuant to Fed. R. Civ. Pro. Rule 24(b) to assert the public's right of access to a judicial record in the above-captioned case. The D.C. Circuit has held that "third parties may be allowed to permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order." *EEOC v. National Children's Ctr.*, 146 F.3d 1042, 1046, 331 U.S. App. D.C. 101 (D.C. Cir. 1998). Specifically, Mr. Leopold requests access to the sealed declaration of Col. John V. Bogdan, filed by the government on June 3, 2013 as an attachment to its

1

Opposition to Petitioners' Emergency Motions Concerning Access to Counsel.[1] [ECF 42.] Should the Court decide that unsealing of the Bogdan declaration is inappropriate, Mr. Leopold requests, in the alternative, that the government be ordered to file a partially redacted, public version of the declaration.

**Procedural Background**

On May 22, 2013, several detainees being held at Guantanamo Bay filed motions with this Court seeking to prohibit the government from using procedures which, they alleged, inhibited their access to counsel. [ECF: 37, 38.] These motions, as well as the attached exhibits, are publicly available. On June 3, 2013, the government filed on the public docket a Notice of Filing Under Seal stating that it was filing "under seal pursuant to the Protective Order in these matters, Respondents' Opposition to Petitioners' Emergency Motions Concerning Access to Counsel." [ECF: 41.] Exhibit 1 to the respondents' opposition was a declaration from Col. John V. Bogdan, the commander of the Joint Detention Group ("JDG"), which is responsible for detention operations at Joint Task Force-Guantanamo ("JTF-GTMO"). (Mem. Op. of July 11, 2013 at 2, 4.)

---

[1] Although Mr. Leopold does not specifically address in this motion whether the government's opposition is itself properly sealed, the Court may wish to consider the issue *sua sponte*. *In re Violation of Rule 28 (d)*, 635 F.3d 1352, 1360 (Fed. Cir. 2011)(holding that it is "generally inappropriate" for a party to mark legal argument in a brief as confidential); Protective Order, *infra*, ¶ I.B.10 (permitting the Court to consider "protected" designation *sua sponte*); *In re Sealed Case*, Case No. 98-3077, 1998 U.S. App. LEXIS 18326 (D.C. Cir. Aug. 7, 1998)(ordering, *sua sponte*, the unsealing of the government's briefs and other documents); *Abu Bakker Qassim v. Bush*, Case No. 05-5477, 2006 U.S. App. LEXIS 8717 (D.C. Cir. Apr. 7, 2006)(per curiam)(ordering, *sua sponte*, the unsealing of motion for client access in Camp Iguana); *In re Lindsey*, 158 F.3d 1263, 1265, 332 U.S. App. D.C. 357 (D.C. Cir. 1998)(order unsealing briefs in light of public release of information); *Strunk v. Obama*, 880 F. Supp. 2d 1, 5 (D.D.C. 2012)(ordering, *sua sponte*, unsealing of case).

2

Although Col. Bogdan's declaration was and is under seal, this Court's recent opinion cites to it extensively and describes portions of its contents in significant detail. (Mem. Op. of July 11, 2013 at 4-7, 21-23, 29-34.)  Despite the fact that making the Memorandum Opinion part of the publicly available would reveal the contents of much of the Bogdan declaration, this Court concluded, "pursuant to ¶ I.E.34 of the Protective Order, that this Memorandum Opinion and the accompanying Order issued this date should not be designated as protected, but will be available on the public record." (Mem. Op. of July 11, 2013 at 35.)

The reference to a "Protective Order" in the respondents' opposition and the Court's memorandum opinion appears to be to the September 11, 2008 order issued by Judge Hogan.  *In re Guantanamo Bay Detainee Litigation*, Misc. No. 08-442 (TFH) (D.D.C.) [ECF: 283].  That protective order allows the government to file classified information under seal, but requires that the government file shortly thereafter a version of the document appropriate for filing on the public record.  ¶ I.F.48.  The protective order also allow the government to file non-classified documents under seal initially, if it deems them to be "protected," but in order to remain under seal, the Court must deem the information "protected."  ¶ I.B.10, ¶ I.E.34, ¶ I.F.49.  It is not clear from the public record whether the government believes that the Bogdan declaration contains any classified information.

**Factual Background**

According to media reports, on February 6, 2013, Army Col. John Bogdan "ordered an intensive search of the communal pod-like area where a majority of detainees

3

are held. Guards confiscated personal items such as family letters, photos and mail from attorneys. The prisoners also said government-issued Qurans were searched in a way they considered religious desecration."[2] David Remes, an attorney for several detainees, alleged in an affidavit that in response to the search of the Qurans by prison staff, over one hundred detainees began a hunger strike.   (Remes Decl. ¶3) [ECF: 38-1].

On May 20, 2013, eighteen uniformed officers and civilian counsel representing detainees sent a letter to Secretary of Defense Charles Hagel requesting an examination of the fitness of Col. Bogdan for command.  The letter contends that there has been "a serious degradation in the quality of life for detainees in Guantánamo" which "appears to have coincided with the arrival of the new Joint Detention Group Commander, COL John V. Bogdan."[3]  [ECF: 38-1 at 35.]

Also referred to in the May 20, 2013 letter is a report (attached to this motion as Exhibit 1) issued by an independent group, the Center for Policy & Research at Seton Hall, which describes the knowledge and role of Col. Bogdan in secretly recording conversations between detainees and their counsel.  The report suggests that Col. Bogdan may have committed perjury in testifying under oath before the military commissions in *U.S. v. Mohammad*.

---

[2] "U.S. says hunger strike grows to 21 at Guantanamo," Ben Fox, Associated Press (Mar. 18, 2013), *available at* http://news.yahoo.com/us-says-hunger-strike-grows-21-guantanamo-145436558.html (last visited July 12, 2013.)
[3] This Court's opinion states that Col. Bogdan did not assume command of JDG until June 7, 2012, which would have been after the letter to Secretary Hagel was sent. (Mem. Op. of July 11, 2013 at 6.)  For purposes of the present motion, it is not important what the exact date was.

4

The continuing controversy over Col. Bogdan has gained widespread media attention.[4] In fact, Thursday's decision from this Court has already resulted in significant press coverage from such publications as the New York Times and the Washington Post, which both refer to Col. Bogdan's role in instituting the searches of detainees' groins.[5] As of July 12, 2013, a Google search for "Colonel John Bogdan" retrieved over 52,000 results.

**Argument**

I. <u>The Bogdan declaration is subject to the First Amendment right of access.</u>

"The first amendment guarantees the press and the public a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed." *Washington Post v. Robinson*, 935 F.2d 282,

---

[4] *See e.g.*, "Gitmo Hunger Strikers Vow to Leave Cuba 'Alive or in a Box,'" Ryan Grim, Huffington Post (April 1, 2013), *available at* http://www.huffingtonpost.com/2013/04/01/alive-or-in-a-box-gitmo-hunger-strikers_n_2995927.html (last visited July 12, 2013); "Gitmo: Examine chief's 'fitness for command,' DOD attorneys tell Hagel," Katherine Guthrie, MSNBC (May 24, 2013), *available at* http://tv.msnbc.com/2013/05/24/gitmo-examine-chiefs-fitness-for-command-dod-attorneys-tell-hagel/ (last visited July 12, 2013); "Widespread Breakdown of Safeguards at Gitmo," Jason Leopold, Al Jazeera (July 3, 2013), available at http://www.aljazeera.com/humanrights/2013/07/20137324426228887.html (last visited July 12, 2013.)

[5] "Judge forbids genital searches of Guantanamo inmates before legal meetings," Julie Tate, Washington post (July 11, 2013), *available at* http://www.washingtonpost.com/world/national-security/judge-halts-genital-searches-of-guantanamo-detainees-before-meetings-with-attorneys/2013/07/11/d6d77900-ea68-11e2-aa9f-c03a72e2d342_story.html (last visited July 12, 2013); "Judge Halts Groin Searches at Guantánamo, Calling Them Abhorrent to Muslims," Charlie Savage, New York Times (July 11, 2013), *available at* http://www.nytimes.com/2013/07/12/us/judge-halts-groin-searches-at-guantanamo-calling-them-abhorrent-to-muslims.html?_r=0 (last visited July 12, 2013).

5

287, 290 U.S. App. D.C. 116 (D.C. Cir. 1991).  Whether the First Amendment guarantees attach to a particular proceeding or document depends on "considerations of experience and logic." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986)("*Press-Enterprise II*").  In applying this test, a court must ask (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 8.

      The Bogdan declaration is a type of document to which the press and public have historically had access at common law, *see infra*, a factor weighing in favor of finding a First Amendment right of access. *In re New York Times Co.*, 585 F. Supp. 2d 83, 89 (D.D.C. 2008)("The fact that there is a common law tradition of right of access is an appropriate consideration to take into account when examining the scope of the First Amendment.")  Declarations filed in support of and in opposition to motions seeking judicial action are routinely filed without a seal. *See e.g.*, Declaration of Colonel John V. Bogdan, attached as Exhibit 1 to Memorandum in opposition to motion for order for humanitarian and life-saving relief, *Anam, et al. v. Bush et al.*, 1:04-cv-1194-UNA (D.D.C.) [ECF: 976-1]. *In re Search Warrant for Secretarial Area,* 855 F.2d 569, 573 (8th Cir. 1988) (experience test satisfied for access to search warrant affidavits, because the court found that they are routinely filed without seal).

      Moreover, courts have generally recognized a First Amendment right of access to dispositive motions and documents in support thereof. *See Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988) (First Amendment right of access applies to "documents filed in connection with a summary judgment motion in a civil

case"); *Allergan, Inc. v. Apotex Inc.*, Case No. 1:10-cv-681, 2013 U.S. Dist. LEXIS 57656, at *24 (M.D.N.C. Apr. 23, 2013)(observing that the "First Amendment generally protects the public's access to documents filed in support of dispositive motions"); *In re Cont'l Ill. Secs. Litig.*, 732 F.2d 1302, 1308-09 (7th Cir. 1984) (First Amendment right of access applied to documents submitted in support of motions).

The Bogdan declaration is similar to an exhibit filed in opposition to a summary judgment or other dispositive motion. The Bogdan declaration was submitted as an exhibit in opposition to the detainees' motions seek judicial action.  The detainees' motions was dispositive in nature and therefore the briefs in favor and opposition to the motions, as well as supporting documents, fall within the scope of the historical First Amendment right of access.

Considerations of logic also militate in favor of applying the First Amendment right of access to the Bogdan declaration.  The Bogdan declaration was created specifically to support the government's position in this litigation (in contrast to, for example, documents uncovered during the course of discovery and not introduced into evidence.)  *Cf. Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.")  Thus, the central role of the declaration is as part of the adjudication of the rights of parties, a process which is promoted by openness (in contrast to, for example, information created pursuant to executive branch investigations). *Cf. Ctr. for Nat'l Sec. Studies v. United States DOJ*, 331 F.3d 918, 936 ("Inasmuch as plaintiffs here request investigatory— not adjudicative— information, we find *Detroit Free Press* distinguishable. We therefore will not expand the First Amendment right of public access

7

to require disclosure of information compiled during the government's investigation of terrorist acts.")  Further, because the Bogdan declaration provides one of the bases for the Court's decision of the detainees' motions, permitting public access to it would enhance public oversight of the judiciary.  *See Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983)("Basic principles have emerged to guide judicial discretion respecting public access to judicial proceedings. These principles apply as well to the determination of whether to permit access to information contained in court documents because court records often provide important, sometimes the only, bases or explanations for a court's decision.")  Because the Bogdan declaration was both quoted and cited in the Court's July 11, 2013 opinion, it is "probative to the outcome of this adjudication, [and its release] will permit the public to follow the arguments, issues, and outcome of this litigation."  *McConnell v. FEC*, 251 F. Supp. 2d 919, 932 (D.D.C. 2003).

It is also significant to the First Amendment analysis that, due to the protective order in this case, the press has no alternate way to learn about the conditions of which the detainees complain.  *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 696 n.12 ("The lack of alternative means for the public to access the hearings also informs our conclusion. The Court in *Houchins* noted at some length that alternative means existed for gathering information about prison conditions. *Houchins*, 438 U.S. at 12-16.  Here, there exist no alternative means for the media to learn about deportation proceedings in special interest cases.")

II.  <u>If the Court concludes that the Bogdan declaration is not subject to the First Amendment right of access, the document is still subject to a common law right of access.</u>

There is a well-established common law right of public access to inspect court records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) ("the courts of this country recognize a general right to inspect and copy . . .judicial records and documents"); *In re Application of National Broadcasting Co.*, 653 F.2d 609, 612, 209 U.S. App. D.C. 354 (D.C. Cir. 1981) (observing that the "existence of the common law right to inspect and copy judicial records is indisputable"). Because of the "different and heightened protections of access that the first amendment provides over common law rights," however, the Court need only address the common law right of access if it determines that the First Amendment does not apply to the document at issue here. *Washington Post*, 935 F.2d at 288 n.7.

Whether a document is subject to the common law right of access depends on "the role it plays in the adjudicatory process." *United States v. El-Sayegh*, 131 F.3d 158, 163, 327 U.S. App. D.C. 308 (D.C. Cir. 1997). There can be no dispute that the Bogdan declaration played a central role in the Court's adjudication of the detainees' motions for access to counsel. This Court's July 11, 2013 decision cites the Bogdan declaration dozens of times, and the section of the opinion entitled "Factual Background" consists almost entirely of information contained in the declaration. (Mem. Op. of July 11, 2013 at 4-7.) Further, the bulk of the Court's *Turner* analysis of the new search procedures focuses on the validity of the rationales advanced in the Bogdan declaration. (Mem. Op. of July 11, 2013 at 19-28.)

9

Judicial records submitted in connection with *habeas* proceedings have also typically been subject to the common law right of access. *See Ashworth v. Bagley*, 351 F. Supp. 2d 786, 792 (S.D. Ohio 2005) (finding that common law right of access existed with respect to *habeas* proceeding and outweighed petitioner's interest in sealing competency reports); *Ramirez v. Attorney Gen. of the State of New York*, 1999 WL 1059966, at *4 (S.D.N.Y. Nov. 22, 1999) (denying request to seal record in *habeas* proceeding, noting that "a judge must carefully and skeptically review sealing requests to ensure that there really is an extraordinary circumstance or compelling need.")

III.   The government's apparent designation of the Bogdan declaration as "protected" is not entitled to deference unless and until it meets the test articulated by the D.C. Circuit in *Parhat v. Gates.*

Should the government decide to contest the unsealing of the Bogdan declaration, it will likely invoke national security concerns in support of denying access. Although courts customarily defer to the executive branch on matters of national security, "detainee cases are unique. Because of the independent role carved out for the judiciary, and [the court's] concomitant obligation to balance the needs of the government against the rights of the detainee, and also to preserve to the extent feasible the traditional right of public access to judicial records grounded in the First Amendment, [the court must] exercise greater caution in deciding to defer." *Ameziane v. Obama*, 620 F.3d 1, 5-6, 393 U.S. App. D.C. 123, 127-28 (D.C. Cir. 2010). Accordingly, the government may not unilaterally determine whether information is "protected." *Bismullah v. Gates*, 501 F.3d 178, 188, 378 U.S. App. D.C. 179, 189 (D.C. Cir. 2007). Instead, "[t]he decision whether

10

to seal a judicial record is . . . committed to the discretion of the district court." *United States v. El-Sayegh*, 131 F.3d 158, 160, 327 U.S. App. D.C. 308 (D.C. Cir. 1997).

In *Parhat v. Gates*, the D.C. Circuit articulated a two-part test for determining whether judicial deference is triggered. *Parhat v. Gates*, 532 F.3d 834, 853, 382 U.S. App. D.C. 233, 252 (D.C. Cir. 2008). To validly withhold information, the government must, at a minimum, make a showing of a "specific," "tailored" rationale for protecting a general category of information, and a precise designation of each particular item of information that purportedly "falls within the categor[y] . . . described." *Id*. It will not suffice for the government to make "generic assertions of the need to protect information" in the categories it identifies, but instead it must "give the court a basis for withholding that is specific to the information it has designated in this case." *Id.* (internal quotation marks omitted.) Thus, unless the government comes forward with reasons to meet the *Parhat* test, the Court should withhold deference to the government's designation of the declaration as "protected."

IV.  The continued sealing of the Bogdan declaration violates the First Amendment.

Given this presumption of openness which attaches to the Bogdan declaration under the First Amendment, a compelling reason for denying access exists only where "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984)("*Press-Enterprise I*").

There can be no compelling reason for denying access to the Bogdan declaration now that the much of its substance has been made public through the publication of the Court's July 11, 2013 decision. *See Washington Post*, 935 F.2d at 291 (finding no compelling reason to seal plea agreement where facts contained therein were already publicly known). It is also not evident from the present public record what threat could be posed by disclosure of the Bogdan declaration to the public. However, movant will address in his reply brief, if necessary, any reasons asserted by the government in favor of maintaining the Bogdan declaration under seal.

If the government does come forward with a compelling reason for denying access to the Bogdan declaration, the Court must still determine whether complete sealing is narrowly tailored to serve the government's interest. A more narrowly tailored alternative in this case would include the filing of a redacted declaration on the public record (the alternative relief sought in this motion), an action which is also required by the terms of the protective order.

V.  The continued sealing of the Bogdan declaration violates the common law right of access.

In *United States v. Hubbard*, 650 F.2d 293, 208 U.S. App. D.C. 399 (D.C. Cir. 1980), the D.C. Circuit identified six factors that might act to overcome the common law presumption of public access: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents at issue; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the

12

judicial proceedings." *EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409, 321 U.S. App. D.C. 243 (D.C. Cir. 1996) (*citing Hubbard*, 650 F.2d at 317-22).

These factors, taken together, do not overcome the public's right of access in this instance. First, and most importantly, the public has a strong need to access the Bogdan declaration, which was introduced in opposition to the detainees' motions for judicial relief from practices which allegedly violated their right of access to counsel. The role of the Bogdan declaration in opposing the detainees' motion was central to resolution of their motions; it was not merely submitted to the Court, but was submitted with the intent that the Court would rely upon it, and in fact it was discussed and relied upon extensively in the Court's opinion (and presumably in the government's opposition papers as well.) *See Berliner Corcoran & Rowe LLP v. Orian*, 662 F. Supp. 2d 130, 135 (D.D.C. 2009) (denying motion to seal when "[t]he parties filed exhibits under seal for the purpose of proving their cases to the Court at the summary judgment stage. As such, the parties explicitly intended the Court to rely on these materials in adjudicating their dispute"); *Zapp v. Zhenli Ye Gon*, 746 F. Supp. 2d 145, 151 (D.D.C. 2010) ("Finally, by filing his Amended Motion for Summary Judgment and its exhibits, Zapp indicated that he intended for the Court to rely on these filings in adjudicating his dispute with Ye Gon. The Court finds that this purpose weighs in favor of the continued disclosure of these filings.") Thus, access to the document would promote public confidence in the integrity of the judicial system by ensuring that the public could review the Bogdan declaration to, for example, confirm that the Court's opinion correctly characterizes its contents. *Zapp*, 746 F. Supp. 2d at 148 ("The presumption in favor of public access to judicial records is

strongest when the documents at issue are specifically referred to in a trial judge's public decision")(internal quotation marks, brackets, and ellipsis omitted).

Additionally, access is favored because the declaration of Col. Bogdan, a high-ranking government employee and controversial public figure, presumably describes the manner in which he has discharged his official duties as commander of JDG. *Cf. Zapp*, 746 F. Supp. 2d at 149("private character may dilute . . . the public's need to access" documents). Further, because this case involves judicial oversight of these allegedly improper executive branch policies, the public has a strong interest in seeing first-hand how Col. Bogdan explains and defends the practices he has instituted or overseen. Col. Bogdan's rationales for the government's policies are of great national importance, not only because of the high-profile nature of the case, but also because they are central to the detainees' ability to access the courts. As the Court explained in its memorandum opinion, this case involves "no ordinary challenge to prison regulations: At its heart, this case is about petitioners' ability to invoke the writ of habeas corpus through access to the Court and access to counsel." (Mem. Op. of July 11, 2013 at 2.)

## Conclusion

For Mr. Leopold, as a member of the media, his ability to receive information is a precondition to the exercise of his own right to freedom of speech and the press. *Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982)("the right to receive ideas is a necessary predicate to the *recipient's* meaningful exercise of his own rights of speech, press, and political freedom")(emphasis in original). For all of the reasons described herein, maintaining the Bogdan declaration under seal violates the First Amendment and common law rights of Mr. Leopold and members of the public. The Court should therefore unseal the Bogdan

declaration, or in the alternative, order the government to place a redacted version on the public record.

  /s/ Jeffrey Light

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey.Light@yahoo.com

*Counsel for Proposed Intervenor Jason Leopold*